Sterling A. Brennan (UT Bar No. 10060)
  sbrennan@mabr.com
Kirk R. Harris (UT Bar No. 10221)
  kharris@mabr.com
Ryan A. Cook (UT Bar No. 17884)
  rcook@mabr.com
MASCHOFF BRENNAN GILMORE & ISRAELSEN, PLLC
111 South Main Street, Suite 600
Salt Lake City, Utah 84111
Telephone:  (801) 297-1850
Facsimile:  (435) 252-1361

Attorneys for Plaintiff LIFETIME PRODUCTS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| Lifetime Products, Inc., a Utah Corporation,<br>        Plaintiff,<br><br>v.<br><br>Logan Outdoor Products, LLC, a Utah Limited Liability Company d/b/a Camp Chef,<br><br>        Defendant. | **LIFETIME PRODUCTS, INC.'S OPPOSITION TO CAMP CHEF'S MOTION TO SEAL ITS ANSWER AND COUNTERCLAIMS**<br><br>Case No. 1:21-cv-00156-HCN-DAO<br><br>District Judge Howard C. Nielson, Jr.<br>Magistrate Judge Daphne A. Oberg |

In October 2021, Logan Outdoor Products, LLC ("Camp Chef") publicly displayed its Apex Pellet Grill (the accused product in this case) at the National Hardware Show where thousands of individuals attended. It did so without taking any security measures to prevent the public from inspecting, observing, interacting with, or documenting the internal features of its product. Camp Chef let the proverbial cat out of the bag to buoy up the market for and commercialize its product; it cannot now magically put that cat back into the bag simply because Lifetime Products, Inc. ("Lifetime") brought suit to enforce its patent rights. For these and other reasons, Camp Chef's Motion to Seal ("Motion," ECF No. 34) should be denied.

# TABLE OF CONTENTS

I. Facts ................................................................................................................................. 2

II. Legal Standards & Requirements ................................................................................... 5

III. Camp Chef Lacks Any Real and Substantial Interest in Preventing Public Access to Information Already Public. ............................................................................................ 6

IV. Camp Chef's Statements in Its Motion Are Insufficient to Overcome the Presumption of Public Access. .................................................................................................................. 8

    A. Camp Chef's Reliance on Its Own Unilateral Confidentiality Designation Under the Protective Order Is Insufficient. ................................................................................. 9

    B. Camp Chef Cannot Simply Declare, *ipso facto*, that the Information Is Confidential. ....... 9

    C. Camp Chef Failed to Even Meet the Procedural Requirements of Its Motion. ................. 10

V. Conclusion ..................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Colony Ins. Co. v. Burke*,
   698 F.3d 1222 (10th Cir. 2012) ............................................................................................5, 10

*Helm v. Kansas*,
   656 F.3d 1277 (10th Cir. 2011) ......................................................................................................5

*JetAway Aviation, LLC v. Bd. of Cty. Comm'rs of Cty. of Montrose, Colo.*,
   754 F.3d 824 (10th Cir. 2014) ........................................................................................................9

*Midland-Ross Corp. v. Yokana*,
   293 F.2d 411 (3rd Cir. 1961) .........................................................................................................7

*Mobile Med. Int'l v. United States*,
   95 Fed. Cl. 706 (2010) ...................................................................................................................8

*Smith v. Healy*,
   744 F. Supp. 2d 1112 (D. Or. 2010) ..............................................................................................8

*Yeiser Rsch. & Dev. LLC v. Teknor Apex Co.*,
   281 F. Supp. 3d 1021 (S.D. Cal. 2017) .........................................................................................8

**Rules**

Local Civil Rule 5-3 ................................................................................................................5, 10

Local Civil Rule 26-2 ......................................................................................................................9

**Statutes**

18 U.S.C. § 1839 .............................................................................................................................6

Nev. Rev. Stat. § 600A.030 ............................................................................................................6

Utah Code § 13-24-2 .......................................................................................................................6

**Other Authorities**

Uniform Trade Secrets Act .............................................................................................................6

I.      FACTS

Lifetime offers several popular residential products to consumers, including a combination grill and smoker ("Lifetime Grill"), which Lifetime has offered for sale since about May 2021. (*See* Compl. ¶¶ 7, 15.) Lifetime obtained U.S. Patent No. 10,292,531 ("the '531 patent"), to protect the innovations in the Lifetime Grill and to prevent competitors, such as Camp Chef, from usurping Lifetime's technology and free riding on Lifetime's development efforts. (*See id.* ¶¶ 8–9, 15.)

In October 2021, the National Hardware Show ("NHS") occurred in Las Vegas, Nevada. (*See id.* ¶ 17.) Over 600 exhibitors participated in the 2021 event. (*See* National Hardware Show, 2021 Exhibitor List, https://www.nationalhardwareshow.com/en-us/attend/2021-exhibitor-list.html (last visited Feb. 11, 2022).) Lifetime and Camp Chef were both among the exhibitors. (*Id.*) Over 25,000 industry professionals and over 120 media outlets typically attend. (*See* National Hardware Show, 2021 Exhibitor Prospectus 2 (last visited Feb. 11, 2022).)[1] According to NHS promotional materials, the NHS "is the one industry event where you are guaranteed to get your brand in front of retailers, wholesalers, distributors, mass merchants, online retailers, co-ops, independent retailers, big box retailers, and even MORE buyers." (*Id.*)

Camp Chef displayed, demonstrated, and offered for sale a combination grill and smoker product at the 2021 NHS, a product that Camp Chef admits was the Apex Pellet Grill configured with optional hybrid propane burners ("Apex Grill"). (*See* Compl. ¶ 17; Def.'s Answer ¶ 17; Def.'s Counterclaims ¶ 23.) Camp Chef did not display, demonstrate, or offer for sale the Apex Grill privately or solely behind closed doors; rather, Camp Chef displayed and demonstrated it

---

[1] https://www.nationalhardwareshow.com/content/dam/sitebuilder/rna/national-hardware-show/2021/docs/nhs-exhibitor-prospectus.pdf.coredownload.070268384.pdf.

openly in the outdoors. (*See* National Hardware Show, Camp Chef Exhibitor Details (last visited Feb. 11, 2022) (indicating that Camp Chef's exhibition space was "OUTDR5529," meaning an outdoor space);[2] *see also* Compl. ¶ 18 (providing images of the Apex Grill in the outdoor exhibition space).) Camp Chef did not try to prevent attendees from opening the upper lid of the Apex Grill and inspecting the internal features therein. (*See* Frye Decl. ¶ 10, Ex. 1.) Nor did Camp Chef restrict access by locking or otherwise physically restricting access to the internal features of the Apex Grill. (*See id.* ¶¶ 10–11.) In fact, it was just the opposite, Camp Chef openly and publicly displayed its new Apex Grill for the public to see and offered it for sale.

After the NHS concluded, Christopher T. Metz, CEO and Director of Camp Chef's corporate parent, Vista Outdoor Inc., stated on a second quarter earnings call that "Camp Chef *unveiled* their [sic] new Apex grill at the Hardware Show." (Vista Outdoor Inc., Q2 2022 Earnings Call Edited Transcript 5 (Nov. 4, 2021) (emphasis added).)[3] In the subsequent third quarter earnings call, Mr. Metz stated that "Camp Chef continues to focus on new product innovation with the spring launch of its Apex grill, expanding the brand's leadership position and giving consumers its choice for wood pellet or propane fuel cooking in a single platform," and that "[t]his innovation offers a breakthrough design . . . ." (Vista Outdoor Inc., Q3 2022 Earnings Call Transcript 4–5 (Feb. 3, 2022).)[4]

---

[2] https://www.nationalhardwareshow.com/en-us/attend/2021-exhibitor-list/exhibitor-details.org-65c8f2e8-6593-465e-b23f-e16ee181ac67.html#/

[3] https://s24.q4cdn.com/982007713/files/doc_downloads/2021/11/25/VSTO-Q2-FY22-Earnings-Transcript.pdf

[4] https://s24.q4cdn.com/982007713/files/doc_downloads/2022/Feb/final-020322-vista-outdoor-q3-fiscal-year-2022-earnings-596375.pdf

On November 18, 2021, Lifetime filed this action to enforce its right to exclude Camp Chef from making, using, offering for sale, importing, and selling a product incorporating the technology claimed in the '531 patent. (*See* Compl. ¶ 22.) On January 28, 2022, Camp Chef filed an Answer and Counterclaims with paragraph nos. 25–27 and 29 of its Counterclaims redacted. (Def.'s Answer & Counterclaims, ECF No. 28.) The redacted paragraphs appear within Camp Chef's counterclaim for declaratory judgment of noninfringement, and generally attempt to explain how, in Camp Chef's view, the Apex Grill's design does not satisfy certain limitations of the claims of the '531 patent. Camp Chef moved this Court to seal its Answer and Counterclaims, simply stating that "[t]he Motion is made on the ground that certain portions of Camp Chef's Answer to Complaint and Counterclaims quote and contain portions of documents designated as CONFIDENTIAL INFORMATION – ATTORNEYS' EYES ONLY pursuant to the Standard Protective Order and contain Camp Chef's confidential, proprietary and sensitive/competitive technical and business information." (Motion 2, ECF No. 30.)

Following its Motion, Lifetime and Camp Chef jointly submitted their Attorney Planning Meeting Report ("APMR"). (ECF No. 33.) In the APMR, Camp Chef asserts that "as evidenced by Camp Chef's Counterclaim for noninfringement and the attorneys' eyes only design documentation that Camp Chef has produced to Lifetime . . . the products that Lifetime accuse of infringement fail to include at least the 'first heat source . . . arranged to directly heat all of the cooking structure' of claim 1 and related limitations in all the other claims of the '531 patent. (*Id.* at 2.) In support of its position for phased discovery, Camp Chef stated that "the accused products are easy-to-understand backyard grills, [and] the configuration of those accused product [sic] is readily apparent from documents and an internal inspection . . . ." (*Id.* at 7.)

4

II.      LEGAL STANDARDS & REQUIREMENTS

The Rule in this District for filing documents under seal is that "[t]he records of the court are presumptively open to the public." DUCivR 5-3(a)(1). The Rule states that "[t]he sealing of pleadings . . . is highly discouraged." *Id.* Only "[o]n motion of a party and a showing of good cause" may a judge order a document sealed. *Id.* A party cannot simply "designate documents as sealable" to overcome the presumption. *See id.* This District's Local Rules further require that any motion to seal must "(A) be narrowly tailored to seek protection of only the specific information that the party alleges is truly deserving of protection; and (B) state the duration of the seal; and (C) state the statute, rule, case law, or reason supporting the sealing of the document . . . ." DUCivR 5-3(b)(2).

The Tenth Circuit presumes that the interests of the public are paramount when weighed against interests advanced by the parties. *See Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011) (quoting *Crystal Grower's Corp. v. Dobbins*, 616 F.2d 458, 461 (10th Cir. 1980)). To overcome the presumption of public access, a party has a "heavy burden" and "must articulate a real and substantial interest that justifies depriving the public of access to the records that inform [the court's] decision-making process." *Id.* at 1292–93. Parties cannot merely assert that documents are subject to a protective order and expect to overcome the presumption against sealing. *Id.* at 1292. Moreover, "[w]here documents are used to determine litigants' substantive legal rights, a strong presumption of access attaches." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1242 (10th Cir. 2012) (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006)).

III. **CAMP CHEF LACKS ANY REAL AND SUBSTANTIAL INTEREST IN PREVENTING PUBLIC ACCESS TO INFORMATION ALREADY PUBLIC.**

Camp Chef's choice to unveil, promote, market, and offer for sale its Apex Grill publicly at the NHS eviscerated any interest in preventing public access to the grill's configuration. Camp Chef cannot reasonably assert that it retains a real and substantial interest in protecting the hardware configuration and design of the Apex Grill as a trade secret or confidential information. For information to qualify as a trade secret, it must not be "readily ascertainable by proper means . . . ." Utah Code § 13-24-2; Nev. Rev. Stat. § 600A.030; 18 U.S.C. § 1839(3). Comment in the Uniform Trade Secrets Act, upon which Utah and Nevada have based their statutes, provides that "[p]roper means include: . . . 4. Observation of the item in public use or on public display." Uniform Trade Secrets Act § 1.

The redacted information in Camp Chef's counterclaim for declaratory judgment of noninfringement was readily ascertainable at the NHS. The information does not, for example, disclose hidden source code. Instead, the focus of Camp Chef's redacted argument is that the configuration of the hardware in the Apex Grill precludes infringement. This hardware was readily ascertainable at the NHS. The Apex Grill was on open display at the NHS. (Frye Decl. ¶ 4.) In fact, when Lifetime employees walked into Camp Chef's booth at the trade show, a Camp Chef employee openly discussed the features of the Apex Grill, opened the grill up, and showed the Lifetime employees the inside of the grill. (*Id.* ¶¶ 5, 11.) There were no restrictions surrounding the access to the Apex Grill. (*See id.* ¶¶ 6-8, 10-11.) In fact, Lifetime's employees asked if they could photograph the Apex Grill and the Camp Chef employee explicitly allowed it. (*Id.* ¶ 8.)

Camp Chef's own statements support the proposition that the information Camp Chef seeks to seal was readily ascertainable. Camp Chef told the Court that "the accused products are

6

easy-to-understand backyard grills, [and] the configuration of those accused product [sic] is readily apparent from documents and an internal inspection . . . ." (APMR 7, ECF No. 33.) In effort to persuade the Court to phase discovery, Camp Chef described much of the information it earlier moved to seal:

> As set forth in Camp Chef's Counterclaim for Noninfringement, the accused products do not include at least the following claim term: a "first heat source . . . distributed across the cooking structure and arranged to <u>directly heat all of the cooking structure</u>." As shown by the renderings in the Counterclaim, the accused products include two portions of the cooking grate under which no burner is located (and which are separated by a sheet metal wall).

(*Id.* at 7–8.)

In documents and communications beyond the instant Motion, Camp Chef and its counsel have asserted that these internal features have not yet been publicly disclosed. (*See, e.g.*, Pollock Decl. ¶ 3, ECF No. 34-1.) Even setting aside Camp Chef's public statements to the Court in the APMR, these assertions are not plausible. Camp Chef admitted that it publicly demonstrated the Apex Grill. (Def.'s Answer ¶ 17.) Camp Chef further admitted that it offered two models of the Apex Grill for sale at the NHS. (*Id.*) In addition, the images taken at the NHS, with the permission from a Camp Chef employee and reproduced in Lifetime's Complaint (*see* Compl. ¶ 18), demonstrate that the public was free to access the Apex Grill at the show, including opening the lid and inspecting the internal features therein. (*See* Frye Decl. ¶¶ 4, 6–8, 10–11.)

Precedent from case law also supports that Camp Chef destroyed any alleged interest keeping the readily ascertainable features of its product confidential after demonstrating it at a trade show. The Third Circuit, for example, has held that there was no trade secret interest in machines that were exhibited at a trade show. *See Midland-Ross Corp. v. Yokana*, 293 F.2d 411, 413 (3rd Cir. 1961) ("Anybody could see what they were."). Another court held that there was

7

no trade secret in a type of light because, *inter alia*, the inventor had displayed the light at a trade show. *See Smith v. Healy*, 744 F. Supp. 2d 1112, 1125 (D. Or. 2010); *see also Yeiser Rsch. & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1046 (S.D. Cal. 2017) ("Disclosure to the public through marketing and sales is fatal to the existence of a trade secret."); *Mobile Med. Int'l v. United States*, 95 Fed. Cl. 706, 740 (2010) ("In summary, because plaintiff distributed or permitted the public display of its design layout, the design layout was readily ascertainable and plaintiff did not take reasonable efforts to maintain its secrecy.").

Without a trade secret or other interest in the information Camp Chef seeks to redact, it cannot have a real and substantial interest outweighing the presumptively paramount interest of the public. The Court should not allow Camp Chef to assert protection in features of a product that it already displayed to the public and should deny Camp Chef's Motion on these grounds.

IV.   CAMP CHEF'S STATEMENTS IN ITS MOTION ARE INSUFFICIENT TO OVERCOME THE PRESUMPTION OF PUBLIC ACCESS.

Ignoring this District's General Rule that motions to seal pleadings are "highly discouraged," DUCivR 5-3(a)(1), Camp Chef makes only two statements in a single sentence in an attempt to justify its Motion. First, Camp Chef states that "certain portions of Camp Chef's Answer to Complaint and Counterclaims quote and contain portions of documents designated as CONFIDENTIAL INFORMATION – ATTORNEYS' EYES ONLY pursuant to the Standard Protective Order . . . ." (Motion 2.) Second, Camp Chef states that the "portions of documents . . . contain Camp Chef's confidential, proprietary and sensitive/competitive technical and business information." (*Id.*) As explained above and below, neither statement is sufficient to overcome the paramount, presumptive public interest in accessing court records.

    A. Camp Chef's Reliance on Its Own Unilateral
Confidentiality Designation Under the Protective Order Is Insufficient.

The Tenth Circuit has repeatedly and expressly rejected the argument that a court should grant a motion to seal because certain documents are designated as confidential under a protective order. *See JetAway Aviation, LLC v. Bd. of Cty. Comm'rs of Cty. of Montrose, Colo.*, 754 F.3d 824, 826 (10th Cir. 2014) (quoting *Helm*, 656 F.3d at 1292; *Colony Ins. Co.*, 698 F.3d at 1241–42). The *JetAway* court stated that "JetAway does not provide *any* basis for sealing the identified documents; instead, it merely states that the documents were filed under seal in the district court pursuant to a protective order and requests that this court maintain the status quo." *Id.* Finding that the movant had only stated that "parties anticipated the production of confidential and proprietary information during discovery," the *JetAway* court held that "generalized allusion to confidential information is woefully inadequate to meet JetAway's 'heavy burden.'" *Id.* (quoting *Helm*, 656 at 1292–93).

Camp Chef's reliance on its own designation under this Court's Standard Protective Order is likewise "woefully inadequate." Such an assertion cannot suffice to outweigh the public interest in accessing court records. The purpose of the Standard Protective Order is to prevent unnecessary delay in discovery and "to secure the just, speedy, and inexpensive determination of every action." DUCivR 26-2(a). Its purpose is not to subvert the paramount interest of the public to access court records.

    B. Camp Chef Cannot Simply Declare, *ipso facto*, that the Information Is Confidential.

Camp Chef states that the portions of the Answer it seeks to hide from public view "contain Camp Chef's confidential, proprietary and sensitive/competitive technical and business information." (Motion 2.) Camp Chef does not explain how or why the underlying information is confidential, proprietary, sensitive, competitive, or technical business information, despite

9

having already publicly shown the grill. Such a declaration, without explanation, is insufficient to outweigh the public interest, particularly where, as here, Camp Chef relies upon the sealed portions to assert its substantive legal rights and invoke this Court's declaratory judgment jurisdiction in a pleading. *See Colony Ins. Co.*, 698 F.3d at 1242.

In *Colony Insurance Co.*, the parties sought to seal documents because "they involve the terms of confidential settlement agreements and/or they were filed under seal in the district court." 698 F.3d at 1241. The *Colony* court found that there were no "specific argument or facts indicating why the confidentiality of their settlement agreements outweighs the presumption of public access," and remained unconvinced that the public interest was outweighed because "[t]he parties themselves placed these settlements at the center of this controversy, in particular through [one party's] counterclaim . . . ." *Id.* Camp Chef has placed the information it now seeks to have sealed at the center of this controversy, basing its counterclaim and invocation of this Court's declaratory judgment jurisdiction on its allegedly confidential information.

  C. <u>Camp Chef Failed to Even Meet the Procedural Requirements of Its Motion</u>.

Local Civil Rule 5-3(b)(2) requires that every motion to seal must "(B) state the duration of the seal; and (C) state the statute, rule, case law, or reason supporting the sealing of the document . . . ." Camp Chef failed to state any proposed duration of the seal required under subsection (B), and Camp Chef did not state any statute, rule, case law supporting the sealing of the document under subsection (C). And, even assuming that Camp Chef provided a "reason" under subsection (C) by way of its two statements in single sentence, neither of those is sufficient reason under existing precedent and Camp Chef's prior public disclosure of the Apex Grill as explained above. (*See supra* §§ III–IV.)

V. <u>CONCLUSION</u>

  For at least the foregoing reasons, the Court should deny Camp Chef's Motion.

| | |
|---|---|
| Date: February 11, 2022 | /s/ *Ryan A. Cook* |
| | Sterling A. Brennan (UT Bar No. 10060) |
| | *sbrennan@mabr.com* |
| | Kirk R. Harris (UT Bar No. 10221) |
| | *kharris@mabr.com* |
| | Ryan A. Cook (UT Bar No. 17884) |
| | *rcook@mabr.com* |
| | MASCHOFF BRENNAN |
| | GILMORE & ISRAELSEN, PLLC |
| | 111 South Main Street, Suite 600 |
| | Salt Lake City, Utah 84111 |
| | Telephone: (801) 297-1850 |
| | Facsimile: (435) 252-1361 |
| | |
| | Attorneys for Plaintiff |
| | LIFETIME PRODUCTS, INC. |

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served on February 11, 2022, via e-mail and the Court's electronic notification system to the following counsel of record:

David T. Pollock
*dpollock@reedsmith.com*
Christopher J. Pulido
*cpulido@reedsmith.com*
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Telephone: 415.543.8700
Facsimile: 415.391.8269

Cameron M. Hancock
*chancock@kmclaw.com*
James T. Burton
*jburton@kmclaw.com*
Joshua Rupp
*jrupp@kmclaw.com*
KIRTON MCCONKIE PC
PO Box 45120
Salt Lake City, UT 84145-0120
Telephone: 801.328.3600
Facsimile: 801.321.4893

                                              /s/ *Ryan A. Cook*
                                              Ryan A. Cook