UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| LIFETIME PRODUCTS, INC., a Utah Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>LOGAN OUTDOOR PRODUCTS, LLC, a Utah Limited Liability Company d/b/a Camp Chef,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO MAINTAIN PROSECUTION BAR DESIGNATIONS (DOC. NO. 95)**<br><br>Case No. 1:21-cv-00156<br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

In this patent infringement action, Defendant Logan Outdoor Products, LLC ("Camp Chef") has filed a Motion to Maintain Prosecution Bar Designations.[1]  Camp Chef seeks an order to keep in place the patent prosecution bar designations it made pursuant to the modified protective order[2] with respect to materials it produced to Plaintiff Lifetime Products.[3]  Lifetime opposes the motion.[4]

Camp Chef's motion is granted in part and denied in part.  The motion is denied as to publicly available information designated as protected under the prosecution bar.  It is also denied as to the device made available for inspection to Lifetime under a "confidential"

---

[1] (Def.'s Mot. to Maintain Prosecution Bar Designations ("Mot."), Doc. No. 95.)

[2] (Mem. Decision and Order Granting Def.'s Mot. to Modify Protective Order ("MPO"), Doc. No. 53.)

[3] (*See generally* Mot., Doc. No. 95.)

[4] (Lifetime Products, Inc.'s Opp'n to Def.'s Mot. to Maintain Prosecution Bar Designations ("Opp'n"), Doc. No. 100.)

designation.  The motion is granted as to nonpublic technical information designated as protected under the prosecution bar.

FACTUAL BACKGROUND

Lifetime alleges Camp Chef's grills infringe its patent (the '531 patent).[5]  The law firm representing Lifetime in this infringement action also represents Lifetime in patent prosecution activities.[6]  For this reason, Camp Chef sought a modified protective order implementing a prosecution bar in this case.[7]  On May 24, 2022, this court granted the motion for a modified protective order, imposing the following prosecution bar:

> Any persons provided technical Protected Information pursuant to this Protective Order will be prohibited from any activities pertaining to the prosecution of any patent applications (e.g., providing direct or indirect input to, or participating in the drafting, amending or prosecution of patent applications), relating to any cooking devices that can operate with a gas heat source or a pellet burner heat source or both for a period of one (1) year from the conclusion of this litigation and any related litigations and appeals vis-à-vis the affected party.[8]

The order granting the modified protective order also notes "[n]othing in this order prevents Lifetime or Camp Chef from later seeking a counsel-by-counsel exemption from the prosecution bar."[9]  Since the prosecution bar was implemented, Camp Chef has produced discovery materials to Lifetime with the accompanying "Prosecution Bar Designation."[10]  Lifetime has opposed many of those designations, asking Camp Chef to de-designate certain

---

[5] (Compl., Doc. No. 2.)

[6] (*See* Def.'s Mot. for Modified Protective Order ("Mot. for MPO") 3, Doc. No. 34.)

[7] (*See generally id.*)

[8] (MPO 9, Doc. No. 53.)

[9] (*Id.*)

[10] (Mot. 4, Doc. No. 95.)

materials.[11]  Camp Chef asserts its designations are proper and seeks to maintain them.[12]  Camp

Chef filed a short-form discovery motion seeking this relief on September 8, 2022.[13]  That

motion was denied without prejudice for failure to discuss the actual disputed documents.[14]  In

response to that order and after failed attempts to meet and confer, Camp Chef filed the instant

motion to maintain prosecution bar designations on September 22, 2022.[15]  Lifetime opposes the

motion, challenging several of Camp Chef's designations.[16]

<u>LEGAL STANDARD</u>

Because the parties' differing interpretations of the language of the prosecution bar is at

the heart of this dispute, that language controls this decision.  The prosecution bar provides:

> Any persons provided technical Protected Information pursuant to this Protective
> Order will be prohibited from any activities pertaining to the prosecution of any
> patent applications (e.g., providing direct or indirect input to, or participating in the
> drafting, amending or prosecution of patent applications), relating to any cooking
> devices that can operate with a gas heat source or a pellet burner heat source or both

---

[11] (*Id.*)

[12] (*See generally id.*)

[13] (Def.'s Short Form Disc. Mot. to Maintain Prosecution Bar Designations, Doc. No. 72.)

[14] (Order Denying Without Prejudice Def.'s Short Form Disc. Mot. to Maintain Prosecution Bar
Designations ("Order Denying SFDM"), Doc. No. 77.)

[15] (Mot. 5, Doc. No. 95.)

[16] (Opp'n, Doc. No. 100.)  In addition to opposing this motion, Lifetime filed its own motion
seeking exemptions to the prosecution bar for members of its litigation team.  (Lifetime
Products, Inc.'s Mot. for Exemptions from Prosecution Bar ("Lifetime Exemption Mot."), Doc.
No. 82.)  It seeks exemptions in light of Camp Chef's petition to the Patent Trial and Appeal
Board for *inter partes* review ("IPR") of the '531 patent and Camp Chef's motion for a stay of
this case pending that review.  (*See id.*; *see also* Def.'s Mot. for Stay, Doc. No. 69.)  The parties
agree the prosecution bar prevents Lifetime's litigation counsel from participating in the IPR.
(Lifetime Exemption Mot. 1, 6, Doc. No. 82.)  Lifetime contends "relief from the prosecution
bar, whether by stripping designations or granting counsel-by-counsel exemptions, is urgent
because Lifetime's first IPR filing is due on November 28, 2022."  (Opp'n 1, Doc. No 100.)

for a period of one (1) year from the conclusion of this litigation and any related litigations and appeals vis-à-vis the affected party.[17]

All other provisions of the standard protective order remain unchanged and in full force.[18]   Paragraph nine of the standard protective order provides "[t]he burden of proving that the designation is proper shall be upon the producing party,"[19] in this case, Camp Chef.

<u>DISCUSSION</u>

Despite the court's order to "discuss the actual disputed documents and specific arguments as to those disputed documents,"[20] Camp Chef does not indicate with particularity what prosecution bar designations it seeks to maintain.[21]   Instead, Camp Chef asserts three general arguments.   First, it contends the prosecution bar mandates "prosecution bar" designation of all technical information.[22]   Second, Camp Chef argues that Lifetime concedes computer-aided design ("CAD") models and manufacturing documents are confidential and, therefore, these documents are properly designated under the prosecution bar.[23]   Third, Camp Chef broadly

---

[17] (MPO 9, Doc. No. 53.)

[18] (*Id.*)

[19] (Standard Protective Order ("SPO") ¶ 9(c), https://www.utd.uscourts.gov/usdc-forms.)

[20] (Order Denying SFDM, Doc. No. 77.)

[21] (*See generally* Mot., Doc. No. 95.)

[22] (Mot. 2–3, Doc. No. 95; Def.'s Reply in Support of Its Mot. to Maintain Prosecution Bar Designations ("Reply") 1, Doc. No. 101.)

[23] (Mot. 6–8, Doc. No. 95.)   Because Lifetime does not challenge the confidentiality of such materials, this issue is not addressed.   In its Motion for Prosecution Bar Exemptions, Lifetime challenges "Camp Chef's prosecution-bar designations, without also challenging confidential and attorneys-eye-only designations."   (Lifetime Exemption Mot. 2 n.1, Doc. No. 82.)   Lifetime seeks relief from the prosecution bar both by seeking exemptions, (*see id.*), and by challenging

argues that this court has already concluded manufacturing documents and CAD models are covered by the prosecution bar, as technical information.[24]  It appears Camp Chef seeks to maintain "prosecution bar" designations for all materials produced before the filing of this motion on September 22, 2022, including productions on September 14, September 22, and all prior productions.[25]

In opposition, Lifetime first argues Camp Chef's productions on September 14 and 22 did not trigger the prosecution bar because Lifetime never accessed them.[26]  With respect to prior productions, in response to Camp Chef's arguments, Lifetime contends the prosecution bar order authorizes but does not mandate designations, and that the court did not prejudge whether CAD models and manufacturing documents are subject to the prosecution bar.[27]  Lifetime then raises specific challenges to the "prosecution bar" designations from Camp Chef's prior productions, discussed below.[28]

## I.      September 14 and 22 Productions

Lifetime argues the prosecution bar does not apply to productions it did not access, including the September 14 and 22 productions.[29]  According to Lifetime, the September 14 and

---

prosecution-bar designations, (*see* Opp'n, Doc. No. 98).  Because the parties' briefs for these motions are interrelated, with overlapping arguments, this order references both.

[24] (Mot. 8, Doc. No. 95.)

[25] (*See generally id.*)

[26] (*See* Opp'n 2–3, Doc. No. 100.)

[27] (*See id.* at 3–6.)

[28] (*See id.* at 6–10.)

[29] (Opp'n. 2, Doc. No. 100; *see also* Lifetime Exemption Mot. 3, Doc. No. 82.)

22 productions made shortly before the filing of this motion constitute a "poison pill" because they provide CAD models and manufacturing information for future, nonpublic versions of Camp Chef products.[30]   Because of this, Lifetime declined to download or access any materials produced from September 14, 2022 forward. [31]

Camp Chef argues that regardless of whether Lifetime has accessed or downloaded these productions, the bar is triggered because it "provided" materials designated "prosecution bar."[32] Camp Chef contends a standard relying on the receipt and review of protected information is unworkable because it has no way to know who actually viewed the materials, it only knows to whom it provided materials.[33]   Lifetime responds by noting these later productions were provided via links Camp Chef can both monitor and disable.[34]

Under these circumstances, Camp Chef's argument as to the September 14 and 22 productions fails.   Prosecution bars are meant to operate as a shield, not a sword.[35]   Lifetime has declined to access Camp Chef's later productions in an effort to preserve its defense to this

---

[30] (Opp'n. 2, Doc. No. 100; *see also* Lifetime Exemption Mot. 3, Doc. No. 82.)

[31] (Opp'n 2–3, Doc. No. 100.)

[32] (Reply 9–10, Doc. No. 101.)

[33] (*See* Def.'s Opp'n to Lifetime Products, Inc.'s Mot for Exemptions from Prosecution Bar 8–10, Doc. No. 98 (expounding on this argument).)

[34] (Lifetime Products, Inc.'s Reply to Def.'s Opp'n to Mot. for Exemptions from Prosecution Bar ("Exemption Reply") 8–9, Doc. No. 103.)

[35] *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-CV-00876-RS (JSC), 2016 U.S. Dist. LEXIS 72217, at *7 (N.D. Cal. June 2, 2016) (unpublished) ("Any prosecution bar should serve only to mitigate the risk of inadvertent use of proprietary information by a patentee, not to unduly burden a patentee with additional expense.").

motion and its arguments related to its motion seeking exemptions.[36]  Where Lifetime certifies it

will not download or access these later productions unless and until a stay of this action is denied

or lifted,[37] and where Camp Chef can both monitor and disable the links providing access,[38]

these productions do not trigger the prosecution bar at this juncture.  Only when Lifetime

accesses the materials through the links provided will the prosecution bar be triggered for these

materials (subject to challenge by Lifetime).

## II.      Designations Made Before September 14, 2022

This leaves Lifetime's challenge to "prosecution bar" designations made before

September 14, 2022.[39]  Due to the nonspecific and general nature of Camp Chef's arguments,

this order addresses the issues as articulated by Lifetime.  Lifetime points to five sets of disputed

materials: (1) CAD models for on-sale products; (2) CAD models for a Camp Chef prototype

shown at the National Hardware Show in Las Vegas in October 2021 ("NHS grill"); (3) CAD

models for a modified prototype of the NHS Grill ("inspection grill"); (4) CAD models detailing

a change suggested by the manufacturer; and (5) manufacturing documents.

Camp Chef's argument that the court mandated prosecution-bar designation for all

technical information is addressed first.  The issue of whether the court already determined CAD

models and manufacturing documents qualify as technical information is addressed next,

followed by a discussion of the five challenged sets of materials given prosecution-bar

designation.

---

[36] (*See* Opp'n 2–3, Doc. No. 100; Lifetime Exemption Mot. 8–9, Doc. No. 82.)

[37] (Lifetime Exemption Reply 8–9, Doc. No. 103.)

[38] (*Id.*)

[39] (*See* Opp'n 2, Doc. No. 100.)

### 1.  The Prosecution Bar Permits Designations; It Does Not Mandate Them.

Camp Chef argues the prosecution bar order *mandates* designation of all technical information as subject to the prosecution bar.[40]  Camp Chef points to a portion of the order stating, "[a]ny documents or information the parties believe to be technical, protected information *must* be separately marked with the designation 'Confidential – Prosecution Bar.'"[41] Camp Chef's interpretation of this language as a mandate goes too far.  Lifetime compares the prosecution bar language to paragraph 4 of the Standard Protective Order ("SPO"), which governs the use of protective designations.[42]  Lifetime argues that despite the fact this provision uses "shall" eight times, the use of "that prescriptive term does not, of course, require anyone to mark anything.  Rather, it indicates how documents are to be marked *in order to invoke the protections of the order*.  So too the provision of the [prosecution bar] . . .  indicates only what 'must' be done *to invoke the prosecution bar*."[43]  Lifetime is correct.  The prosecution bar does not mandate designation of all technical material; it simply permits it—subject to challenge.

### 2.  The Court Has Not Ruled All CAD Models and Manufacturing Documents Constitute "Technical Protected Information" Automatically Warranting Prosecution Bar Designation.

Camp Chef argues the court "explicitly categorized CAD models and manufacturing information as 'technical' information," and asserts all its designations are proper as a result.[44]

---

[40] (*See* Mot. 2, 4, Doc. No. 95; Reply 1, Doc. No. 101.)

[41] (MPO 9, Doc. No. 53 (emphasis added); *see also* Reply 1, Doc. No. 101; Mot. 2, 4, Doc. No. 95.)

[42] (SPO ¶ 4, https://www.utd.uscourts.gov/usdc-forms.)

[43] (Opp'n 4, Doc. No. 100 (emphasis in original).)

[44] (Mot. 8–9, Doc. No. 95.)

In support of this position, Camp Chef points to the following language from the prosecution bar order: "The [] prosecution bar only relates to technical confidential information, such as CAD models, manufacturing information, and source code."[45]

Lifetime contends that in order for information to "qualify for a prosecution-bar designation under the Order, material must both be technical and qualify as PROTECTED INFORMATION (i.e., CONFIDENTIAL or AEO).  But those are *necessary* conditions, not sufficient."[46]  In support of its position, Lifetime asserts the court "expressly recognized"[47] the other designation categories—i.e., Protected Information, Confidential Information, and Confidential Information – Attorneys Eyes Only—are "significantly broader than the information that triggers the prosecution bar."[48]

The "prosecution bar" designation is limited to technical information, but not all technical information automatically qualifies for the designation.  The prosecution bar states in relevant part, "[a]ny persons provided technical Protected Information pursuant to this Protective Order will be prohibited from any activities pertaining to the prosecution of any patent applications."[49] The references to materials "such as CAD models, manufacturing information, and source code"[50] are simply examples of what *might* qualify as technical information.  The list does not reflect a predetermination, just as it is not an exclusive list of categories whose designation

---

[45] (MPO 7, Doc. No. 53; *see also* Mot. 8, Doc. No. 95.)

[46] (Opp'n 5, Doc. No. 100 (citation omitted) (emphasis in original).)

[47] (*Id.*)

[48] (MPO 8 n.3, Doc. No. 53.)

[49] (*Id.* at 9.)

[50] (*Id.* at 7.)

cannot be challenged.  Indeed, recognizing reasonable minds could differ "as to the applicability

of the 'prosecution bar' designation to particular information," the court explicitly stated that

parties "may challenge [a] designation through the procedure outlined in the SPO."[51]

This approach is consistent with *In re Deutsche Bank Trust Company Americas*.[52]  This

case directs courts to remember "[t]he facts, not the category must inform the result" and "each

case should be decided based on the specific facts involved therein."[53]  Predetermining

designations of entire categories of information without considering challenges would

contravene this approach.  Each challenged designation category will be evaluated individually;

there is no predetermined, blanket prosecution-bar designation which is immune from challenge

or review.

### 3.  Lifetime's Challenges to Designations

#### a.  CAD Models for On-Sale Products Were Improperly Designated Under the Prosecution Bar.

The first set of materials with challenged designations consists of CAD models for on-

sale products.  Lifetime argues Camp Chef's on-sale products do not warrant prosecution-bar

designation.[54]  In support of its position, Lifetime relies on the following testimony from Camp

Chef's expert witness:

> Q. . . . Is there information about the products in the CAD files that cannot be
> obtained from the products, from inspecting the products themselves?
>
> MR. POLLOCK: Objection; vague, misleading.

---

[51] (*Id.* at 9.)

[52] 605 F.3d 1373 (Fed. Cir. 2010).

[53] *Id.* at 1379.

[54] (Opp'n 6–8, Doc. No. 100.)

THE WITNESS: Like I say, I think they're substantially the same.[55]

Q. . . . [I]s there information about the Camp Chef Apex Grills that can be obtained from the CAD files that could not also be obtained from inspecting the products themselves?

MR. POLLOCK: Objection; lack of foundation, compound, misleading, vague.

THE WITNESS: Not that I know of. . . .[56]

Based on this testimony, Lifetime asserts "there is nothing to be learned from the CAD models [of on-sale products] that could not also be learned from the publicly available products."[57]  It contends, "being exposed to the [CAD] models does not create any risk that Lifetime's litigation counsel would use non-public information gleaned from the [CAD] models to help Lifetime's patent prosecution" and, thus, "there is no basis for maintaining [the] prosecution-bar designation" for such products.[58]  In support of this position, Lifetime relies on *Karl Storz Endoscopy-America, Inc. v. Stryker Corporation*[59] for the proposition that a prosecution bar may only cover existing products "so long as the information at issue in the existing, accused products is not capable of being ascertained through use, visual inspection, reverse engineering, or tearing down or testing the product."[60]  Lifetime argues the only information in "Lifetime's counsel's heads" are "the dimensions, internal physical structures,

---

[55] (Dep. of Glen Stevick at 12:18–24, Doc. No. 83-3; *see also* Opp'n 6–7, Doc. No. 100.)

[56] (Dep. of Glen Stevick at 14:2–9; *see also* Opp'n 6–7, Doc. No. 100.)

[57] (Opp'n 7, Doc. No. 100.)

[58] (*Id.*)

[59] No. 14-CV-00876, 2016 U.S. Dist. LEXIS 72217 (N.D. Cal. June 2, 2016) (unpublished).

[60] *Id.* at *14.

and such—which *could be* rendered from CAD models but are also observable in the publicly sold products themselves."[61]

Camp Chef maintains its designations of CAD models for on-sale versions are proper.[62] Camp Chef concedes that "a version of the Apex grill has been on sale since June 2022, at which time certain dimensions and internal physical structures contained in the CAD models became public."[63] Camp Chef also concedes it sent an email to Lifetime on September 1, 2022, indicating its intent to "down-designate to 'Confidential' the CAD files related to the models that are currently on sale."[64] However, Camp Chef argues "the CAD models themselves have never been provided to the public."[65] And Camp Chef contends the testimony from its own expert witness is "*not proof* that the sold version of the accused product contains *every* piece of detailed technical information contained in the corresponding CAD model" but, instead, indicates he "simply does not know, one way or the other, whether they are 'exactly' or 'substantially' the same."[66]

Additionally, Camp Chef points out *Karl Storz* is not binding, and argues the case is unpersuasive because the *Karl Storz* court rejected a "similar argument that Lifetime makes here, 'assert[ing] that a prosecution bar can never cover existing products.'"[67] Camp Chef contends

---

[61] (Opp'n 8, Doc. No. 100 (emphasis in original).)

[62] (Reply 3, Doc. No. 101.)

[63] (*Id.* at 4.)

[64] (Mot. 4–5, Doc. No. 95.)

[65] (Reply 4, Doc. No. 101.)

[66] (*Id.* at 5 (emphasis in original).)

[67] (*Id.* at 4.)

Lifetime could have "conducted reverse-engineering to determine whether its assertion that there is no difference between the CAD and on-sale product is true—but they chose not to," noting Lifetime's "expert admits that he did not 'disassemble' or 'measure' any portion of the accused product."[68]

However, reverse engineering is not the only method for showing a product is publicly available (and not subject to a prosecution bar). The *Karl Storz* court listed other methods, including "use, visual inspection . . . or tearing down or testing the product."[69] The use of the disjunctive "or" indicates a party need not use all methods. While the *Karl Storz* court ultimately rejected an expert's testimony that a product's technical information was publicly available, it did so because the testimony was based solely on the expert's review of confidential schematics rather than actual visual inspection of the product.[70] While Lifetime's expert may not have engaged in reverse engineering, his testimony indicates he did more than just a cursory visual inspection. The relevant portion of his testimony reads:

> Q. And you disassembled portions of it; is that correct?
> A. "Disassemble" sort of implies I took nuts and bolts off. I did not do any of that.
> Q. Okay. So you didn't remove the auger assembly from the side of the grill?
> A. No.
> Q. But you did open the lid?
> A. I opened the lid, removed the grill surfaces, removed the drip pan, inspected the – the pellet burner cylinder, climbed underneath, looked at what Dr. Stevick called the inverted trough, the pellet auger, the hopper, et cetera.
> Q. Okay. Did you take any measurements?
> A. No.[71]

---

[68] (*Id.* at 4–5; *see also* Ex. A to Reply, Brent W. Webb Dep. at 105:6-20, Doc. No. 101-2.)

[69] *Karl Storz*, 2016 U.S. Dist. LEXIS 72217, at *14.

[70] *Id.* at *18–20.

[71] (Ex. A to Reply, Brent W. Webb Dep. at 105:6–20, Doc. No. 101-2.)

Where Lifetime's expert inspected the product, a version of the grill has been on sale since June 2022, and Camp Chef's expert testified he was unaware of information in the CAD files which could not be obtained by an inspection, Lifetime has established the information in the CAD models are publicly available.  For these reasons, the prosecution-bar designations of the CAD models for on-sale products are improper; the bar does not apply to these materials.

### b. CAD Models for the NHS Grill Prototype Were Properly Designated Under the Prosecution Bar.

The next set of materials with challenged designations consists of CAD models for the NHS grill—a prototype of the Apex grill shown at the National Hardware Show in Las Vegas in October 2021.[72]  Lifetime contends that because the tradeshow was attended by tens of thousands of industry professionals and hundreds of exhibitors, the prototype was publicly available.[73]  Lifetime argues the CAD models for the NHS grill reveal nothing other than what was displayed at the tradeshow; thus, it should not have been designated under the prosecution bar.[74]  Additionally, Lifetime represents the NHS grill is an "old and abandoned version[]" which Camp Chef "does not intend to offer[] for sale publicly," and Lifetime has "nothing to gain by drafting patent claims to cover abandoned or unadopted variants that Camp Chef will never bring to market."[75]

Camp Chef contends the NHS grill is a version of the Apex grill it has "never offered, and does not intend to offer, for sale publicly," but the CAD models for this prototype "detail the

---

[72] (Opp'n 9, Doc. No. 100; Reply 5–6, Doc. No. 101.)

[73] (Opp'n 9, Doc. No. 100.)

[74] (*Id.*)

[75] (*Id.*)

specific changes that were made to [] prior versions and provide insight into Camp Chef's

engineering, product development, product testing, and design decision[-]making."[76]  Further,

Camp Chef argues Lifetime's assertion that the NHS grill was open to the public for inspection is

wrong.[77]  In support of this position, Camp Chef points to deposition testimony from Ms. Frye,

one of Lifetime's employees, who attended and saw the NHS grill at the tradeshow.[78]  The

testimony focuses on the extent to which she and Mr. McMurrin, another Lifetime employee,

inspected the NHS grill:

> Q Did Mr. McMurrin stick his head inside the Camp Chef hybrid grill and look around?
> MR. HARRIS: Objection. Vague.
> THE WITNESS: No. I don't recall.
> BY MR. PULIDO:
> Q Did you or Mr. McMurrin stick either of your cameras inside the Camp Chef hybrid grill and take pictures?
> A No. We did not.
> Q Did you look at any of the internal components of the grill?
> MR. HARRIS: Objection. Vague.
> THE WITNESS: No, I did not.
> BY MR. PULIDO:
> Q Did Mr. McMurrin look at any of the internal components of the grill?
> MR. HARRIS: Objection. Calls for speculation.
> THE WITNESS: As far as I know, he did not.[79]

This testimony demonstrates Lifetime did not have the same access to the NHS grill as to

Camp Chef's on-sale products.  The two Lifetime employees reviewed and inspected the NHS

grill much less extensively than Lifetime's expert inspected the Apex grill.  Ms. Frye's testimony

establishes she and Mr. McMurrin engaged in a cursory visual inspection at best.  Additionally, it

---

[76] (Mot. 7, Doc. No. 95.)

[77] (Reply 5–6, Doc. No. 101.)

[78] (*Id.* at 6.)

[79] (Ex. B to Reply, Jaymee Frye Dep. at 85:2–20, Doc. No. 101-3.)

is not apparent from Ms. Frye's testimony that she or other members of the public had access to the NHS prototype sufficient to complete a more thorough inspection.

These facts must be viewed against the premise that "information related to new inventions and technology under development . . . may pose a heightened risk of inadvertent disclosure" justifying a prosecution bar.[80]  Lifetime's argument that it has nothing to gain by drafting patent claims related to abandoned or unadopted product versions is unavailing.  Even abandoned or unadopted versions of a product could provide insight into engineering, product development, product testing, and designs—and this information poses a heightened risk of inadvertent disclosure in the hands of a competitor.  The prosecution-bar designations for the CAD models of the NHS grill are proper and shall be maintained.

### c.   CAD Models for a Modified Prototype of the NHS Grill Were Improperly Designated Under the Prosecution Bar.

The third set of materials with challenged designations consists of CAD models for a modified prototype of the NHS grill ("Inspection grill").[81]  Both parties agree that a sample of the Inspection grill was made available to Lifetime's litigation counsel for inspection.[82]  Both parties also agree the Inspection grill provided to Lifetime's litigation counsel was designated "Confidential," not "Prosecution Bar."[83]  Camp Chef argues "the internal components of the

---

[80] *See Deutsche Bank*, 605 F.3d at 1381.

[81] (Opp'n 9, Doc. No. 100; Reply 6, Doc. No. 101.)

[82] (Opp'n 10, Doc. No. 100; Reply 6, Doc. No. 101.)

[83] (Opp'n 10, Doc. No. 100; Reply 6, Doc. No. 101.)

inspection grill—even if observed by Lifetime's counsel—were not, and never have been, 'publicly' available," making the prosecution-bar designation for the CAD models proper.[84]

The main purpose of a prosecution bar is to protect sensitive, technical information from inadvertent use by a competitor.[85]  Permitting litigation counsel of a competitor to inspect a modified prototype before designating it under the prosecution bar undermines any later prosecution-bar designation.  Camp Chef could have chosen to wait to produce the modified prototype for inspection until after designating it under the prosecution bar, but it did not.  Under the circumstances, the CAD models for the Inspection grill cannot maintain prosecution-bar designation.  Therefore, the prosecution-bar designations for the CAD models for the Inspection grill are improper, and the bar does not apply to these materials.

> ### d.  CAD Models Detailing Suggestions by the Manufacturer Were Properly Designated Under the Prosecution Bar.

The next set of materials with challenged designations constitutes CAD models which contain changes suggested by the manufacturer.[86]  Lifetime argues these CAD files contain manufacturer suggestions amounting to nothing more than a "trivial tweak."[87]  It contends the suggested tweak reflects an "old and abandoned version[]" that Camp Chef "does not intend to offer[] for sale publicly."[88]  Accordingly, Lifetime asserts it has "nothing to gain by drafting

---

[84] (Reply 6, Doc. No. 101.)

[85] *See Deutsche Bank*, 605 F.3d at 1378–79.

[86] (Opp'n 9, Doc. No. 100; Reply 6, Doc. No. 101.)

[87] (Opp'n 9, Doc. No. 100.)

[88] (*Id.*)

patent claims to cover abandoned or unadopted variants that Camp Chef will never bring to market."[89]

Camp Chef argues Lifetime's characterization of what changes are "trivial" cannot control.[90]  It further contends Lifetime and its counsel have no basis to determine whether Camp Chef will later adopt any suggested design changes.[91]  Camp Chef is correct on both points. Accordingly, Camp Chef may maintain its prosecution-bar designation of the CAD files containing changes suggested by the manufacturer.

### e. Camp Chef Did Not Meet Its Burden to Establish the Manufacturing Documents Were Properly Designated Under the Prosecution Bar.

Camp Chef contends the manufacturing documents provided alongside its CAD models for the Apex grill were properly designated under the prosecution bar because the information they contain is competitively sensitive, confidential, and technical.[92]  According to Camp Chef, these documents "include images, diagrams, figures, arrows, and text from Camp Chef engineers to assist the manufacturer with implementation of [] various changes"[93] and  reveal confidential information "about the product development, product design processes, structure, components, materials and finishes of the Apex grills."[94]  For its part, Lifetime argues "any insight into Camp Chef's engineering, product development, product testing, and design decision-making that the

---

[89] (*Id.*)

[90] (Reply 6–7, Doc. No. 101.)

[91] (*Id.* at 7.)

[92] (*Id.*)

[93] (Mot. 9, Doc. No. 95.)

[94] (Reply 7, Doc. No. 101.)

manufacturing documents might provide is at most relevant to their CONFIDENTIAL or AEO

designations."[95]

Camp Chef has not met its burden to establish these documents contain the sort of

technical, confidential, nonpublic information related to the cooking devices at issue such that

they should be subject to the prosecution bar.  If these documents, for example, detailed

confidential, technical information about specific changes to nonpublic versions of Camp Chef

grills, like the NHS grill or the Inspection grill, they would be protected by the prosecution bar.

But from the little information Camp Chef has provided, the documents appear to relate only to

the Apex grill.  And Camp Chef has not established the documents contain any confidential,

technical information which cannot be gleaned from a thorough inspection of the publicly

available Apex grill.

Instead, it appears the documents contain confidential business information.  For

instance, Camp Chef expressed concern that the manufacturing documents will provide Lifetime

insight into its product development, product design processes, and manufacturing priorities.[96]

There is no question this constitutes highly confidential business information.  But sensitive,

confidential, business information—without more—is not subject to the prosecution bar.  Such

information can be protected by other provisions of the standard protective order, such as an

attorneys'-eyes-only designation.[97]  Accordingly, Camp Chef has not met its burden to establish

---

[95] (Opp'n 9–10, Doc. No. 100 (internal quotation marks omitted).)  Lifetime also argues the
prosecution bar relates only to "cooking devices—not development and design processes."  (*Id.*
at 10 (internal quotation marks omitted).)  This reading is too narrow.  The prosecution bar
applies to technical, protected information relating to cooking devices of the types specified.
(*See* MPO 9, Doc. No. 53.)

[96] (Reply 7, Doc. No. 101.)

[97] (SPO ¶ 2(b), https://www.utd.uscourts.gov/usdc-forms.)

these manufacturing documents are subject to the prosecution bar.  Therefore, the designation is improper, and the bar does not apply to these materials.

### 4. Improper Designations Exonerate Lifetime's Litigation Counsel from the Prosecution Bar as to Those Materials.

Lastly, the parties disagree as to the effect an improper prosecution-bar designation and subsequent redesignation has on Lifetime's litigation counsel.  Camp Chef contends that even in the event of de-designation, Lifetime's litigation counsel would still be barred.[98]  Specifically, Camp Chef argues that under the explicit terms of the prosecution bar, affected counsel cannot participate in this litigation or related litigation until one year after this litigation concludes.[99]  In response, Lifetime asserts that "[o]nce all the documents, by exposure to which an attorney became subject to the bar, have lost their prosecution-bar designations, there is no longer any prosecution-bar information for the attorney to inadvertently use," meaning "the bar has outlived any legitimate purpose and can no longer be justified."[100]

Camp Chef's argument fails.  The prosecution bar is not triggered by an improper designation or a designation which no longer applies.  If that were the case, Camp Chef could assign prosecution-bar designations to everything produced—knowing that if it were later ordered to de-designate certain materials or previously designated materials later became public, attorneys exposed to once-designated documents would be prevented from participating in patent prosecution activities related to the subject matter of this litigation.  The purpose of a prosecution bar is "only to mitigate the risk of inadvertent use of proprietary information by a patentee, not to

---

[98] (Reply 9, Doc. No. 101.)

[99] (*Id.*)

[100] (Opp'n 10, Doc. No 100.)

unduly burden a patentee with additional expense."[101]   Given this, Lifetime's position is correct. This approach helps ensure the prosecution bar is used as a shield, not a sword.

<u>CONCLUSION</u>

Camp Chef's motion to maintain prosecution bar designations[102] is granted in part and denied in part, and the court ORDERS as follows:

1.      The motion is DENIED as to the CAD models for on-sale products.  CAD models for on-sale products are stripped of their prosecution bar designation and the bar no longer applies to Lifetime's litigation counsel as to these materials.

2.      The motion is GRANTED as to the CAD models for the NHS grill.  CAD models for the NHS grill maintain their prosecution bar designation.  The bar is in full effect for any of Lifetime's litigation counsel provided these materials.

3.      The motion is DENIED as to the CAD models for the Inspection grill.  CAD models for the Inspection grill are stripped of their prosecution bar designation and the bar no longer applies to Lifetime's litigation counsel as to these materials.

4.      The motion is GRANTED as to the CAD models detailing changes suggested by the manufacturer.  CAD models detailing changes suggested by the manufacturer maintain their prosecution bar designation.  The bar is in full effect for any of Lifetime's litigation counsel provided these materials.

---

[101] *Karl Storz*, 2016 U.S. Dist. LEXIS 72217, at *7.

[102] (Doc. No. 95.)

5.      The motion is DENIED as to the manufacturing documents.  Manufacturing documents are stripped of their prosecution bar designation and the bar no longer applies to Lifetime's litigation counsel as to these materials.

DATED this 18th day of November, 2022.

BY THE COURT:

_Daphne A. Oberg_

Daphne A. Oberg
United States Magistrate Judge

22